## INVESTMENT ADVISORY AGREEMENT

JAN 1 2 2006

Client/Title: Katherine Kelly _____

Waylove Clickbury Trust

**McKINLEY CAPITAL MANAGEMENT, INC.**

McKinley Number: _____

### ADVISER

3:06CV08JKS

The undersigned Client hereby appoints McKinley Capital Management, Inc. ("Adviser") as Client's investment adviser and sole agent and attorney-in-fact for the above referenced account, with full power and authority to manage for Client a portfolio of certain investments and all substitutions and replacements thereto (the "Portfolio") upon the terms and conditions set forth herein.

1. **Trading Authorization and Limited Power of Attorney.**
   Client authorizes Adviser to exclusively invest and reinvest the assets in the Portfolio on behalf of Client. Adviser's authority includes the power to purchase, sell, exchange property and to trade in stocks, bonds, and any other securities, commodities or other properties, issued or unissued, on margin or otherwise, in accordance with your terms and conditions for the account and risk of the undersigned and in the name or account number of the undersigned. Said authority to also include the power to exercise whatever rights are conferred upon the holder of property held in the Portfolio including (without limitation) the power to exercise rights, warrants, conversion privileges, redemption privileges, to tender securities pursuant to a tender offer and the like; provided that Adviser shall not have authority to and shall not vote proxies solicited by or relating to issuers of securities held in the Portfolio. Adviser may invest all or a portion of the assets of the Portfolio in shares or units of beneficial interest of one or more investment companies ("mutual funds") or other collective investment funds advised by Adviser, provided that the ADVISORY fees payable under paragraph 5 of this Agreement shall be reduced by a pro rata portion of any advisory fee paid to Adviser by such fund(s). The undersigned hereby agrees to indemnify and hold you harmless, and pay you promptly upon demand, from any and all losses arising therefrom or debit balance due thereon.

   In all such purchases, sales, trades or transactions the herein named Broker/Dealer is authorized to follow the instructions of McKinley Capital Management, Inc. in every respect concerning the undersigned's account with you; and Adviser is authorized to act for and on behalf of the undersigned in the same manner and with the same force and effect as the undersigned might or could do with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales, trades or transactions.

   The undersigned hereby ratifies and confirms any and all transactions heretofore or hereafter made by Adviser for the account of the undersigned.

   This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which the Broker/Dealer may have under any other agreements or agreement between the Broker/Dealer and the undersigned.

   This authorization and indemnity is a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to and actually received by the Broker/Dealer, but such revocation shall not affect any liability in any way resulting from transactions initiated prior to such revocation. (This authorization and indemnity shall inure to the benefit of the present Broker/Dealer and of any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.)

   Adviser's authority with respect to the Portfolio is exclusive. Client shall not purchase, sell or exchange property for the Portfolio nor permit any party other than Advisor to purchase, sell or exchange property for the Portfolio. If Client is a Trust, Client shall provide Adviser with a copy of all amendments to its trust agreement or similar governing document.

   Adviser shall be responsible for managing the Portfolio in accordance with only those investment objectives and restrictions that Client communicates to Adviser. Client understands that Adviser does not offer financial planning or investment supervisory services and that investments in equity securities should constitute only a portion of the Client's entire investments invested over an extended period of time.

   Client retains authority to exercise voting rights with respect to securities in the Portfolio. Adviser shall not be required or held responsible for forwarding proxy material to Client.

   000185

2. **Employment of Brokers.**
   Client hereby directs Adviser to effect transactions involving property held or to be held in the Portfolio through the broker designated below:

   MSDW
   _Brokerage Firm Name_

   250-135441-240
   _Brokerage Account Number_

   Rod Harbanfre  AE#
   _Name of Representative_

   6263 N. Scottsdale Rd #300
   _Address_

   Scottsdale AZ 85250
   _Address_

   (480) 922-7848   (480) 922-____
   _Telephone_     _Fax_

-1-

---

EXHIBIT

B

2. **Employment of Brokers (cont.)**
Client understands that by directing brokerage to the above broker, Client may forego certain benefits that may otherwise be available (such as lower commission expenses) if Adviser were to designate a broker on Client's behalf. Adviser may execute transactions (including batch transactions) through other broker/dealers to obtain best price execution. Client understands that Adviser generally will not negotiate more favorable commission rates from the above broker. Client further understands that Adviser may batch transactions for the Portfolio with transactions on behalf of other clients and that depending on the commission rate charged by the above broker, Client may pay higher commissions than such other clients.

If Client has not directed brokerage to a particular broker, Adviser may designate a broker to engage in any transactions involving property held or to be held in the Portfolio. In selecting a broker or brokers on behalf of Client, Client understands and agrees that Adviser may take into consideration, in addition to the commission rate, the reliability and efficiency in executing orders and the rendition of investment research viewed in terms of either the particular transaction or in terms of Adviser's overall responsibilities with respect to the accounts over which Adviser exercises responsibility.

Client understands that Adviser's ability to obtain best commissions on Client's transactions may be affected by the Adviser's use of brokers as a source of referrals.

Adviser shall not be liable to Client for any act of or breach of duty by any broker.

3. **Custody of Portfolio and Cash; Appointment of Custodian.**
Physical custody of the Portfolio and of any uninvested cash balances relating thereto shall be maintained by the custodian designated below (the "Custodian") and not by Adviser.

Custodian: MADOFF

Client shall forthwith enter into a custodial agreement or trust agreement with the Custodian in form and substance satisfactory to Adviser and shall instruct the Custodian to engage in transactions with respect to the portfolio solely upon instructions of Adviser. Client shall give the Custodian standing instructions to forward to Adviser confirmations of all transactions relating to the Portfolio, together with copies of monthly and other statements relating to the Portfolio. The Custodian shall be solely responsible for settlement of all transactions executed on behalf of the Portfolio and receipt and disbursement of funds for and from the Portfolio. Adviser may rely upon reports from the Custodian as to custody of the Portfolio, settlement of transactions and the location, description and amount of properties constituting the Portfolio. Adviser shall not be liable to Client for any act of or breach of duty by the Custodian.

4. **Reports, Information and Cooperation.**
Adviser shall furnish Client with a quarterly written report setting forth the status of property held in the Portfolio, in Adviser's customary format. Adviser shall maintain the strictest confidence with regard to Client's financial affairs and Client will keep all investment advice furnished by Adviser as confidential and for Client's exclusive use and benefit.

Client shall be responsible for communicating to Adviser Client's investment objectives and restrictions for the Portfolio.

5. **Advisory Fee.**
In consideration of the services to be rendered by Adviser, Client shall pay to Adviser quarterly, in advance, a fee according to the Cumulative Fee Schedule contained herein.

Calculation of the fee shall be based upon the fair market value of the Portfolio (including cash or its equivalents) as determined by Adviser as of the date hereof for the first quarterly payment of fees, and thereafter as of the last day of the calendar quarter immediately preceding the calendar quarter for which the fee is payable. The fee payable for any portion of a calendar quarter shall be prorated. Valuations on listed securities shall be the last sale price or, if no sale occurred, then the mean between the bid and asked price. Unlisted securities will be valued at the bid price and cash, if any, at principal amount. Securities which do not have an ascertainable market price shall be valued at cost.

A prorated management fee invoice or refund will be calculated for each deposit or withdrawal during a calendar quarter. Client and/or Broker shall notify Adviser in writing of any deposits and/or withdrawals.

In the event that this agreement is terminated as hereinafter provided, the Portfolio shall be valued as of the termination date, and final fees shall be paid based upon that valuation and prorated from the end of the prior quarter to such date.

Client has executed the Adviser's Investment Instructions to Adviser and the Client New Account Information forms.

Client agrees to pay collection costs incurred in the event Adviser must submit account to collection for payment of outstanding management fees.

Balanced accounts are billed on a pro rata basis based on Equity/Income percentages.

The Broker/Dealer or Custodian named herein is hereby authorized and directed to accept this agreement as my instructions to you for payment of account management fees as billed by the Adviser. You are directed to pay these fees without further instructions from the undersigned. You are directed to issue payment to McKinley Capital Management, Inc. at 3301 C Street, Suite 500, Anchorage, AK, 99503, unless otherwise directed by Adviser. Please take these funds from cash or money market balances in my account. You are directed to make payment to Adviser within 10 (ten) business days of the receipt of my quarterly billing.

-2-

In the event that I, the Client, change broker/dealers or custodians during the calendar quarter, you are directed to pay Adviser the full amount billed for the entire quarter.

5. **Advisory Fee (cont.)**

Billing Agent: _____

_____

_____

_____

### Cumulative Fee Schedule

| Domestic & International Portfolios* | | Fixed Income Portfolio | |
|---|---|---|---|
| Amount | Annual Fee | Amount | Annual Fee |
| $200,000 - $500,000 | 1% | First $1 Million | 0.80% |
| Over $500,000 | .75% | Next $1 Million | 0.70% |
| | | Next $1 Million | 0.60% |
| | | Next $2 Million | 0.50% |
| | | Next $5 Million | 0.45% |

*Amounts less than $200,000, accepted upon prior approval, will be charged a minimum fee of 1.5%.

6. **Service To Other Clients.**
Client understands that Adviser performs investment advisory services for various clients. Client agrees that Adviser may give advice and take action with respect to any of its other clients (including affiliates and employees of Adviser) which may differ from advice given or the timing or nature of action taken with respect to the Portfolio, so long as it is the Adviser's policy, to the extent practical, to allocate investment opportunities to the Portfolio over a period of time on a fair and equitable basis relative to other clients. It is understood that Adviser shall not have any obligation to purchase or sell any security which Adviser, its principals, affiliates or employees may purchase or sell for its or their own accounts for the account of any other client, if in the opinion of Adviser such transaction or investment appears unsuitable, impractical or undesirable for the Portfolio.

7. **Terms of Agreement.**
This agreement shall exist from the date hereof unless terminated as provided herein. Client may terminate this agreement upon Adviser's receipt of written notice, provided that Adviser receives such notice within five business days following the date hereof. The agreement may also be terminated at any time by mutual consent of the parties, or without such consent, by either party giving to the other 10 (ten) days written notice of termination. If Client is an individual, this agreement shall terminate upon Adviser's receipt of written notice of death or legal incapacity of Client. Termination of this agreement shall not, in any case, affect or preclude the consummation of any transactions initiated prior thereto. If the agreement is terminated, Adviser shall return to Client a pro rata portion of any prepaid management fee.

8. **Representations of Adviser.**
Adviser represents to Client that Adviser is registered as an investment Adviser under the Investment Advisers Act of 1940 and, if Client is an "employee benefit plan" as defined in the Employee Retirement Income Security Act of 1974, that Adviser is a fiduciary with respect to the Portfolio.
Adviser represents to Client that Robert B. Gillam has been retained as the Chief Investment Officer and that Adviser will notify Client if Robert B. Gillam ceases to remain as Chief Investment Officer for Adviser within a reasonable time after such occurrence.

9. **Assignment.**
No assignment of this agreement shall be made by Adviser without consent of Client.

10. **Liability.**
Adviser shall have no duty, responsibility or liability whatever with respect to any of Client's property not constituting a portion of the Portfolio.

11. **Amendment.**
This agreement may be amended only by written instrument, effective on a date agreed upon, dated and signed by both of the parties hereto.

-6-

000183

**12. Applicable Law.**
This agreement shall be construed and interpreted in accordance with the laws of the State of Alaska; (except for the choice-of-law provisions of such laws). The federal and state courts situated in the Third Judicial District at Anchorage, Alaska shall be the exclusive forum for any action brought under this agreement. By their signatures below, the parties hereby consent to the personal jurisdiction of such courts and waive any defense that such courts provide an inconvenient forum.

**13. Compliance.**
Signature hereto acknowledges receipt of Part II of Adviser's Form ADV.

**14. Severability.**
The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any and all other provisions hereof.

Please countersign this fee agreement in the appropriate space below and return same. A copy should be kept for your files.

AGREED AND ACCEPTED:

_Kathryn Kelly Stevens 4-14-02_
Client Signature / Dated                Client Signature / Dated

Kathryn Kelly Stevens
Printed Name                            Printed Name


Client Signature / Dated                Client Signature / Dated


Printed Name                            Printed Name

McKinley Capital Management, Inc.

By: _Diane Wilke_
Diane Wilke, Vice President


**McKinley Capital Management, Inc.**
3301 C Street, Suite 500 • Anchorage, Alaska 99503
Phone (907) 563-4488 • Fax (907) 561-7142
New Accounts Fax (907) 562-3859
http://www.mckinleycapital.com
E-mail: info@mckinleycapital.com

000182

*Registered Investment Advisers*

-7-

## FEE SCHEDULE AMENDMENT
INVESTMENT ADVISORY AGREEMENT

McKinley Fee Schedule for Domestic and International Equity Accounts is amended as follows:

| Amount | Annual Fee |
|---|---|
| $200,000 - $500,000 | 1% |
| Over $500,000 | .75% |

Account # 250-135441-240

AGREED AND ACCEPTED:

*Kathryn Kelly Stevens* 2/14-00
Client Signature / Dated

Kathryn Kelly Stevens
Printed Name

McKinley Capital Management, Inc.

By: *Diane Wilke*
Diane Wilke, Vice President

**McKinley Capital Management, Inc.**
3301 C Street, Suite 500 • Anchorage, Alaska 99503
(907) 563-4488 • Main FAX (907) 561-7142
New Accounts FAX (907) 562-3859
http://www.mckinleycapital.com/
E-mail: info@mckinleycapital.com

*Registered Investment Advisers*

000181

McKINLEY CAPITAL MANAGEMENT, INC.

Printed 10/18/99